Nicholson, C. J.,
delivered tbe opinion of tbe Court.
Tbis is a quia timet bill to enjoin defendants from proceeding to bave certain specified entries made by tbem in tbe entry-taker’s office of Dyer county, surveyed and perfected into grants, upon tbe ground that such entries and grants will operate as clouds on complainant’s titles to the same land.
The facts as, shown upon tbe face- of the bill are, that complainant was elected entry-taker in March, 1850, and went out of office on the 16th of February, 1852. During the time be was entry-taker he made about fifteen entries in bis own name — about eight were made in tbe name of complainant’s son, who was bis deputy, and afterward transferred by him to com *276 plainant — and about three or four made by his son after complainant ceased to be entry-taker, and conveyed by him to complainant. On a portion of the entries complainant has obtained grants, and on others his title is still inchoate.
He shows that five of his entries were made in his own name, based upon former entries made in the names of other persons, but to which he deraigned no title. These entries, as well as those made by himself and • his deputy before referred to, were re-entered about the first of September, 1851, in order to avoid the consequences of the hiatus in the law for perfecting entries into grants, which occurred at that time; and upon a portion of the re-entries so made grants have been issued.
He alleges that the title acquired by him by virtue of his re-entries is not affected by the fact that he was entry-taker when the re-entries were made: first, because by the original entries made, either by himself before he was entry-taker, or by others and transferred to him, he had an equitable title, which was not affected by the hiatus in the law, and therefore he can abandon his last entries and rely on the first; and second, if his titles were rendered void by the hiatus, that the defects were cured by the act of 1851, c. 326, s. 1, p. 603. Complainant further alleges that while the act of 1777 • may have rendered void entries made in his own name, yet that it would not affect those made by his deputy in his name, and afterward transferred to complainant.
It is shown in the proof that the entries made by *277 complainant’s son after complainant ceased to be entry-taker, and which were transferred to complainant, were made by his son in his own name, while acting as deputy of complainant’s successor.
The first question which presents itself is, whether complainant’s own statement of the nature and condition of his titles does not show him so involved in violations of law in the procuring of the same that he cuts himself off from any claim to the aid of a Court of Equity. "Without considering the grounds in which he seeks to get rid of his violations of law in making entries in his own name, or in the name of his deputy, it is obvious that, as to five of the entries made in his own name, and while he was entry-taker, he gives no legal excuse. The act of 1777 forbids an entry-taker to enter vacant lands in his own office, and expressly declares all such entries void, and the lands subject to other entries. This law rested upon the policy of opening the vacant lands freely to appropriation and settlement, and to prevent entry-takers from defeating this policy by availing themselves of their official advantages to monopolize the lands. Complainant comes before us, showing that he claims lands by virtue of twenty-five entries made, either directly or indirectly, in violation of this positive prohibition of law. As to five of these entries, his titles, upon his own showing, are based on violations of his official duty. As to the others, he stands prima fade involved in like violations of official duty, but askfe the Court to relieve him from the consequences of his official misconduct by allowing him to repudiate his *278 illegal acts, and to rest his titles on other grounds not affected with illegality. To entertain his bill under such circumstances, would be to abandon the favorite principle of a Court of Equity, which sternly withholds its remedial interposition whenever the complainant comes before it involved in circumstances of illegality or fraud. In this case we are asked by complainant to restrain the defendants from obtaining grants which will constitute clouds upon his titles. 'Whether defendants’ grants would be mere clouds on complainant’s titles, or valid titles capable of being enforced in a Court of Law, depends upon the question whether complainant has any titles on which he can stand. Before he can claim the interposition of the Court of Equity, he is bound to show that there are no clouds on his own titles which do not repel him. We think he has failed to make out such a case, and that he must be left to his remedies at law.
The decree of the Chancellor will be reversed, and the bill dismissed with costs.